I'm Alan Sampson, attorney for Petitioner, Mr. Chongxin Chen. I would like to address two issues, the first being the concept of deferred enforced departure, which was granted to Petitioner in 1990. I would like to raise the question of whether deferred enforced departure is the enforcement of status in the fact that he was quote-unquote paroled. This issue was not raised before the IJ, am I correct? This issue was raised to the BIA, yes, it was raised before the immigration judge, it was. It was. It's in the record. The immigration judge referred to it in her decision, AR 36 through 38. This is the idea that he is in fact equivalent of being paroled? Yes. The fact that he was, because of DED, deferred enforced departure, he was provided a period of temporary legitimate stay analogous to parole. When you say functional equivalent, they don't seem to me to be too equivalent. In order to parole, you have to be outside the United States. He was allowed to come in or stay here some 15 years ago because of the Chinese protection act, because of the Tiananmen Square problem. That's correct. So he is in the country under the other act, but you can't get paroled into the United States if you're already in the United States. So tell me, A, what is the equivalent, and B, how can we use this functional equivalency to interpret statutes that were bound by the wording of it? Well, there's generally a paucity of a definition of parole in the law. The one case that trial counsel was able to come up with was matter of O, in which aliens were airlifted into the United States, but were granted temporary status, which, pardon me. Was that the Philippines case? Sorry? Was that from the Philippines? Yes, that's correct. It was sort of backwards reasoning. I'm sorry? It was sort of backwards reasoning. Backwards reasoning, yes. We're not going to presume that our military did something illegal, so we're going to look for a way where Congress authorized. What is the analogous congressional authority for the executive order, which allowed the Chinese to stay here? Well, the congressional legislation later on, several months later, the Chinese Student Protection Act, which allowed... Between the time that Tiananmen Square happened, Congress came up with legislation, and I... What is the statutory authority? I mean, the President, I assume, can't, you know, grab a phone or, you know, can't say, oh, you know, I like you, I'd like to stay in this country. I assume there has to be a congressional authority for that. The executive order was promulgated in August 1990 to protect the Chinese who were in the United States based on the Tiananmen Square riots until January 1, 1994. The Chinese Student Protection Act was passed in 1992. So you are correct to say that there is a gap, Your Honor, and I am faced, admittedly, with a paucity of citations. Nonetheless, given the fact that there is sketchy definitions of what parole is, and it was a unique situation, subsequent to Tiananmen... I thought you were going to argue, and I thought you were arguing that by now it's a matter of, oh, we're not going to presume our President is something illegal, and therefore, insofar as he had authority to do what he did in his executive order, it must have been the parole statute. I thought that's what you were arguing. He did grant a four-year period. My client... And he didn't do it illegally. We know that because he was the President, right? That's correct, Your Honor. The military can't do no wrong. We certainly know the President can't. We have to then reverse-engineer a source of statutory authority for him to have done that. And by analogy, it's a matter of, oh, it would seem to me the parole statute is not... Yes. That's what you're arguing. Yes, Your Honor. Okay. I would further request the Court, forgive my temerity, but I would request the Court to slightly revisit a decision in Chan versus INS, in which it... Chan? Pardon? Different Chan. Different Chan. C-H-A-N is the spelling. No, this is A-N. He's E-N, and this case is A-N. Okay. No, this case is E-N, and the case I'm referring... The INS case is E-N. You're talking about Chan versus Reno? Yes, right. Okay, go ahead. Sorry. You're pronouncing it as Chan, but... Pardon me. It's Chan. Basically... Or... Chan. Chan, there you go. Okay. Basically... On the same case. I'm asking the Court to consider reviving my client, that is, Mr. Chan's unsuccessful 1993 CSPA adjustment application, in the light of 245i, because 245i would allow an applicant who entered without inspection to adjust status. In a sense, what I'm asking the Court to consider is piggybacking. I'll be quite frank. Piggybacking CSP protection, which he may not have qualified for, with 245 protection, which he may have qualified for, if you consider his CSPA adjustment application to be the equivalent of an I-130 relative petition or a labor certification application. I'm basically asking the Court to reconsider whether to reconsider waiving the nonexistence of an I-130 application in the light of 245. In the instant case, when 245i is applied to a CSPA application, thereby making the CSPA application analogous to an I-130 petition. It is a stretch, admittedly. It is a unique situation, but I'm asking the Court to consider combining the benefits of the LIFE Act with CSPA protection. I don't know how many potential beneficiaries would be in this situation. I mean, that's exactly what's precluded by Chan. And that's the stuff of which we can't do anything about. Chan referred to the sunset date of the President's executive order as January 1st, 1994. Pardon me, as the sunset date of a CSPA application as January 1st, 1994. My client's CSPA application had not yet been adjudicated by January 1994. It was denied in January 1995. There's a one-year period of pendency, which I hope may distinguish this case from Chan v. Reno. The period of pendency would sort of connect CSPA with the LIFE Act. I see. So what you're saying, though, the fact that the executive order sunset, you're sort of trying to deny that, bridge the gap, right. His CSPA application had not been adjudicated on the sunset date, but was denied slightly more than one year later. It is this I'm suggesting might be used in bridging the gap because the LIFE Act referred to an application date of October 1994. So this four-month period, the sunset date of the CSPA application, which I think was earlier in 1994, and the ability to apply for a LIFE Act application would be bridged by the fact that his CSPA application had not been adjudicated. Thank you. I'm Regina Byrd, counsel for Respondent Attorney John Ashcroft. I'm sorry. To answer the first question about when was the executive order, which is what initially gave Chinese aliens this particular relief of being able to remain in the United States even though they were no longer eligible to be here. It's the executive order that was promulgated by the President through 12-7-2-11. Through that order, the President allowed these Chinese aliens to remain in this country. And what was the President's authority for doing that? The executive office has primary and exclusive jurisdiction of immigration matters. So consequently, the President was acting within its authority. I'm losing you. You know, if you're right up to the microphone, I can hear you, but you're going back. The President has exclusive authority, the executive branch does, over immigration matters. So consequently, he acted within the authority granted to him.  I don't think the President can, let's say he's walking around Washington, D.C. and he runs into some French guy, let's say. He says, you know, you're really a very nice fellow, I like you a lot, I realize you don't have any basis in law for staying here, but because I like you, I'm going to confer on you the right to stay here for the rest of your life. The President couldn't do that, could he? Not necessarily, Your Honor, but he does have authority when it comes down to public... What do you mean, can he or can't he? Can't he say that someone can stay here for the rest of their lives? Can't he just decide that somebody who otherwise has no eligibility to stay under any of our laws, in any country, somebody from another country who's here as a visitor, and the President says, you know, you're just a lovely guy, I really like you, even though you're here as a tourist, I'm going to give you the right to stay here for the rest of your life, never be deported. The President is required to exercise his authority in immigration matters when it comes to various foreign policy concerns. The reason this particular article was just... Policy concerns would just be him liking some guy, saying, I like you, you know, I think you're a nice person, I think it would be nice to have you around Washington, you might come to these Washington parties, you know, you'd be sort of a nice addition to the social scene here, I will exempt you from all immigration laws. The President can't do that, can he? I don't believe the President can do that, Your Honor. Okay, so if the President cuts an executive order that lets thousands of people, for good and humanitarian reasons, stay in this country for months on end, presumably he had to have had lawful authority to do that. Yes. He could have just done it on his own. No, he was acting under the authority... I'm asking you, what is that authority? What is the statute that gave the President authority to allow these folks to stay here for months on end? I cannot point to a specific statute within the INA that provides the President with authority, but he has... must we not then infer, as the Board did in matter of O, that the authority, because we know the President never acts unlawfully, just like the military never acts unlawfully, that the President must have been acting under the closest available grant of statutory authority, that being the grant of parole, that what he was really doing is he was paroling... Am I using the right term? I'm listening to your question, Your Honor. That he was letting these people in under the parole statute. No, and in fact, matter of O is not at all similar to this case, Your Honor, so that is not an appropriate analogy. The President, when he enacted this executive order, 12711, he was acting under the authority that was given to him by the Constitution and over immigration matters. Consequently, when he issued this order, he issued it for a specific period of time and not to last indefinitely. That's totally different from parole. Now, after the President issued this order, Congress itself, and I sent to the court a 28-J letter discussing the legislative history, where Congress had made clear that if we don't do something, after this time period that the President has set forth through this executive order expires, then what's going to happen is that these Chinese nationals will be left here without any kind, of course, of legal authority to remain. So if we do nothing and the President does not issue another executive order, then these aliens will be basically subject to being deported back to their country. Consequently, Congress decided, because the President did not issue a subsequent order, decided to issue itself the Chinese Student Protection Act, which interestingly covered not only students, it covered all Chinese nationals who were in this country within a certain period of time. In that legislative history, Congress specifically said that if these aliens are not granted some other authority, which we need to do by way of the CSPA, then they will be here illegally, which means that Congress recognized that the President was not trying to grant these aliens some additional legal authority to remain beyond the period in which he certified in the executive order. Consequently, Congress came out with the CSPA, which granted the aliens authority to remain here from, I believe it was April 11th? I'm not sure I understand your argument. What it was saying is, if the President doesn't exercise his discretion to let them stay, then they will be here without authority. I don't see how that answers the question of where does the President get the authority to let them stay to begin with. What gives him the power to make their stay here lawful? Isn't this the kind of question that the Board should have decided? You know, there is Board authority. It doesn't have the authority, Your Honor, to second-guess what Congress has signed. The Board's authority comes out regularly. The Board does not have the authority to second-guess what Congress has signed. It has a precedent, matter of O, where it took a highly unusual and misogynistic fact pattern where the executive branch did something and said, we're not going to presume illegality, so we're going to analogize it to the closest grant of statutory authority. This is essentially what Petitioner here says. We can't presume the President acted illegally, and, therefore, we think the closest authority is the proposed statute. Isn't this a kind of — exactly the kind of issue that should be decided by three members of the Board, particularly since you have a Board precedent on the line? You have matter of O where they did this really fancy thing. Matter of O is not a Board precedent in this particular case. Matter of O dealt with a group of Vietnamese citizens who were removed from that country and brought to, excuse me, Guam. Before coming to Guam and being removed by the Army, which is not the executive branch, Your Honor, but before bringing these aliens to Guam, these aliens had — they had been brought to Guam by the President. They had been brought to Guam by the President. It is under the President's authority. But the Army's action — Is it in the judicial branch? The Army? The Army is in the executive branch. I didn't say they were not in it. I said they are not the executive branch. So, consequently, when the Army took the action of removing these aliens from their land, they were also granted — some of them were given visas, others were given certain documents from the United States Embassy, allowing them to enter into this country. So, consequently, when the Board looked at Matter of O, trying to find out whether or not these aliens have some legal right here, they looked at what happened — I thought you said Matter of O was not a Board precedent. It's not a Board precedent for this case, Your Honor, because in this case, you have a direct act of Congress. I think you misunderstood my question. Matter of O is a Board precedent in the sense that it was decided by the Board. But it does not have a bearing on this case. I thought you were asking whether or not Matter of O, because it is a Board precedent. If you let me finish my question, then you will find out what I'm asking. Matter of O is a precedent decided by the Board. Here, Petitioner makes an argument that wants to apply this Board precedent to another highly unusual situation and says this is highly analogous. The Board should look at this and see whether the rationale of Matter of O, which is not a makeshift rationale, it is taking something that's really not there and making it fit in order to avoid the influence of illegality on the part of the Army, the same rationale should apply to the President when he passes executive order. And my question is, why isn't that precisely the kind of decision that three Board members need to make? Now, maybe they'll distinguish Matter of O. Maybe they'll think, you know, it's too far afield. But isn't that the kind of thing that is not subject, is not readily subject to streamlining? No, Your Honor. Matter of O does not apply to this case. The circumstances are totally different. In Matter of O, those aliens were in Vietnam. The Army took it upon itself to give various documents. I understand you can distinguish it, and I understand that maybe the Board would distinguish it, but I don't think you are getting to the heart of my question. Has the Petitioner raised the question that it's sufficiently difficult and the answer to which is not obvious so that streamlining does not apply? It's not one of those situations where a single Board member can look at it and say nothing new here, no point in bothering two other Board members with it. Well, this Court has sent this case back to the Board. The Board has no authority to second-guess the Attorney General, excuse me, to second-guess Congress or any legislation. In fact, the Board constantly says in its opinions that ---- But I think the point is if we send it back, it can say that, right? Of course. I mean, you've presented us with a lot of legislative history and a lot of nuances of the case. It's not necessarily an easy question. I think Judge Kaczynski is just asking, look, should this have been streamlined or not, or was it a novel question? Is it controlled by existing precedent? Maybe, maybe not. In this case, the government believes it was appropriately streamlined. We believe it was streamlined appropriately because the attempt to equate what happened in this particular case with Mr. Chin in terms of granting him bond and granting him what's called deferred enforced departure, which is acronym VED, or in no way parole, in order for an alien to demonstrate his eligibility under CSPA, he has to demonstrate that he was either admitted and paroled, admitted, excuse me, by inspection into this country, or he was admitted by parole in this country. Mr. Chin acknowledges that he was not inspected because he was not inspected even if he were to be able to prevail on his theory that somehow this functional parole process that he says that he deserves to be granted because of the INS's kindness of granting to him parole and VED would not apply here. This Court, even if it agrees with everything else, it should not refer this case back because in order to establish eligibility for CSPA, then Mr. Chin was required to demonstrate that he was in fact inspected. He admitted he was not inspected, so consequently the Court should uphold the Board's decision. Some reaffirmance simply says that we've taken a look at everything. The Board says this. And we find that what the immigration judge has determined is sufficient. And so even if the immigration judge erred and the Board erred as well in this parole functional parole status process that Mr. Chin is asking this Court to agree with him on, then the Court should nevertheless affirm the Board because Mr. Chin was not inspected and CSPA definitely requires that. This Court said that in Chan or Chan. And it also said that ---- Were the petitioners a matter of all inspected? I'm sorry, Your Honor? A matter of all the people there. Were they inspected? Yes, they were. And that's the key. They were inspected because they presented they were presented whether they wanted to be presented or not. They were presented by the Army to INS officials who gave some of them visas, gave some of them documents that they received from the Department of State who also had authority to inspect. So the inspection occurred there. No inspection has occurred here. Mr. Chin came into this country on his own. I thought that some of them didn't have those documents. I read the case again last night, Your Honor, and all of them had some form of a document. And you're right. What the Board was trying to do was trying to look to find out why would the Army have done this? Did it act illegally? And it determined no, it did not act illegally because these aliens had some form of documentation. Whether they were the documentation that INS would normally have accepted, they had some documentation from people who had the authority in this government to grant it. Well, what do we make of the language in O, matter of O, that says, in each case the immigration judge found the applicants had not been paroled in the United States, that their inspection had been merely deferred? It implies to me that it hadn't occurred. That the inspection had not? Yeah. I'm sorry. You're going to have to read that again. This is the third paragraph of the decision. In each case, the immigration judge found that the applicants had not been paroled into the United States, that their inspection had merely been deferred, and that they were therefore excludable. That implies to me that they weren't inspected, as you have indicated. Well, I said corrected, Your Honor. No, I haven't. You know, I haven't flashed back the rest of the opinion, but, you know. Okay. Thank you. Thank you. I don't remember whether you, sir, have saved any time. I think your time is up. Okay. Sorry. We'll stand for a minute. We are now on the last case on the calendar, I believe, Alvarez-Garcia, again against Ashcroft. Good morning, Your Honors. Good morning. Martin Guajardo on behalf of the petitioner. How are you? Good.
judges: Wallace, Kozinski, Thomas